5:99cv303/mr/mD

FORM TO BE USED BY FEDERAL PRISONERS IN FILING A
CIVIL ACTION UNDER 28 U.S.C. §1331 or §1346

In the United States District Court

for the Northern District of Florida

Division

ROBERT WILLIAMS

(Enter above the full name of the
plaintiff or plaintiffs in this action).

vs.

| MARK A. HENRY | JAMES HARDY | ROY TROUTMAN |
| LENA MONTGOMERY | ROBERT RUNYON | CHARLES KESLER |
| | JOSEPH PARRISH | MICHAEL HARRIS |
| WILLIAM S. WILLINGHAM | JERRY TINCHER | DELBERT MCKINNEY |
| MICHAEL JANUS | RAMONA PUESCHEL | KEITH MCDANIELS |
| | GEORGE MCBRIDE | ANNE SIMS |
| | STERLING DAWSON | KENNETH MCMULLIAN |
| | RANDY JACKSON | JAMES WICHOWSKI |

(Enter above the full name of the
defendant or defendants in this action)

A.  Have you begun other actions in federal Court dealing with
    the same facts involved in this action? Yes ( ) No (X)

B.  If your answer to A is yes, describe the action in the spaces
    below.  (If there is more than one action, describe the addi-
    tional actions on the reverse side of this page).

    1.  Parties to the action:_____

        _____

        _____

    2.  Court (federal court, name the district)_____

        _____

    3.  Docket number:_____

    4.  Name of judge to whom case was assigned:_____

        _____

attachments not
scanned

1

## CONTINUATION OF DEFENDANTS

EDITH BAREFOOT

ALLEN RAINES

LEVI DAVIS

KENNY LEWIS

DONNIE LERGER

LARRY LONG

ROBERT L. MATHEWS

CAROLYN V. RICKARDS

L. JENKINS

T. J. BONDURANT

page 2

    5.  Disposition (for example:  Was the case dismissed?  Was it appealed?  Is it still pending?): _____

_____

C.  1.  Did you present the facts relating to your complaint in the internal prison grievance procedure? Yes (X)  No (X)

    2.  If your answer is yes, what was the result? THE INSTITUTIONAL

REMEDY COORDINATOR, STERLING DAWSON, HAS BIASEDLY DENIED EACH COMPLAINT

AND ERRONEOUSLY REJECTED ONE. REGIONAL OFFICE DID LIKEWISE, CENTRAL OFFICE
HAS NOT RESPONDED./THE CENTRAL OFFICE HAS JUST ERRONEOUSLY REJECTED ALSO!

    3.  If your answer is no explain. IT'S IMPERATIVE THAT I IMMEDIATELY SEEK

THE COURT'S INTERVENTION IN ORDER TO STOP A FORM OF ILLEGAL TORTURE BEING

COMMITTED AGAINST ME, ALSO I'M SEEKING MONETARY DAMAGES FAR BEYOND THE PRO-
VISIONS OF THE FEDERAL TORT CLAIM ACT.

D.  1.  Did you present your claim to the Bureau of Prisons or other federal agency for administrative action? Yes (X)  No ( )

    2.  If your answer is yes, state the date such claim was submitted and what action, if any, has been taken.

EXHIBIT-A REVEALS ON 8-24-99, I SUBMITTED EMERGENCY SENSITIVE COMPLAINTS TO

THE REGIONAL DIRECTOR, OFFICE OF PROFESSIONAL RESPONSIBILITY, AND INTERNAL

AFFAIRS. AS OF TODAY, 10-11-99, the only response I'VE RECEIVED IS FROM THE
OFFICE OF PROFESSIONAL RESPONSIBILITY WHO REFERRED MY COMPLAINT TO ASS. DEP. DIR.

    3.  If your claim has been acted on, attach copies of any correspondence you have received from the Bureau of Prisons or other federal agency concerning your claim.

E.  1.  Are you suing for a work related injury? Yes ( )  No (X)

    2.  If your answer is yes, state the nature of the duties you were performing when the injury occurred.

_____

_____

_____

Page 3

<u>PARTIES</u>

(In item I below, place your name in the first blank and place
your present address in the second blank.  Do the same for addi-
tional plaintiffs, if any).

I.  Name of plaintiff ROBERT WILLIAMS

    Address POST OFFICE BOX 7007, MARIANNA, FLORIDA  32447-7007

(In item II below, place the full name of the defendant in the
first blank, his official position in the second blank and his
place of employment in the third blank.  Use the space below item
II for names, positions and places of employment of any addi-
tional defendants.)

II. Defendant MARK A. HENRY                     is employed as WARDEN

                                    at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL.
                                                                    32446-7917

2.  Defendant LENA MONTGOMERY                  IS EMPLOYED AS ASSOCIATE

    WARDEN                    at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

    (SEE ADDITIONAL DEFENDANTS ON CONTINUATION PAGE)

<u>STATEMENT OF CLAIM</u>

III.  State here as briefly as possible the facts of your case.
      Describe how each defendant is involved.  Include also
      the names of other persons involved, dates and places.
      Do not give any legal arguments or cite any cases or statutes.
      If you intend to allege  a number of different claims, number
      and set forth each claim in a separate paragraph.  (Use as
      much space as you need.  Attach extra sheet, if necessary).

  1. MY CLAIM INVOLVES NUMEROUS VIOLATIONS OF THE FIFTH AMENDMENT PROTECTION

     OF THE PROCEDURAL DUE PROCESS CLAUSE.

  (A) KNOWINGLY, ON 1-21-99, MY CASE MANAGER INTENTIONALLY AND DECEITFULLY

      MISCALCULATED MY CUSTODY CLASSIFICATION SECTION TOTAL POINTS AS 11 INSTEAD

      OF THE CORRECT SCORE OF 8. THIS WAS BIASEDLY COMMITTED TO DELIBERATELY DENY

      MY ELIGIBILITY FOR A MINIMUM CUSTODY REDUCTION AND PLACEMENT TO A CAMP.

      (SEE STATEMENT OF CLAIM CONTINUATION)

DEFENDANTS CONTINUED

3. Defendant WILLIAM S. WILLINGHAM is employed as ASSOCIATE WARDEN at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

4. Defendant MICHAEL JANUS is employed as CAPTAIN at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

5. Defendant JAMES HARDY is employed as S.I.S. LIEUTENANT at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

6. Defendant ROBERT RUNYON is employed as LIEUTENANT at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

7. Defendant JOSEPH PARRISH is employed as LIEUTENANT at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

8. Defendant JERRY TINCHER is employed as LIEUTENANT at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

9. Defendant RAMONA PUESCHEL is employed as LIEUTENANT/ACTING LIEUTENANT at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

10. Defendant GEORGE MCBRIDE IS EMPLOYED AS DISCIPLINARY HEARING OFFICER (DHO) at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

11. Defendant ROY TROUTMAN is employed as CREEK UNIT CASE MANAGER at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

12. Defendant CHARLES KESLER is employed as CREEK UNIT COUNSELOR at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

13. Defendant MICHAEL HARRIS is employed as CREEK UNIT MANAGER at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

14. Defendant DELBERT MCKINNEY is employed as CORRECTIONAL OFFICER at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

15. Defendant KEITH MCDANIELS is employed as CORRECTIONAL OFFICER at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

16. Defendant ANNE SIMS is employed as CASE MANAGER COORDINATOR at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

17. Defendant STERLING DAWSON is employed as ADMINISTRATIVE REMEDY COORDINATOR/PARALEGAL at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

18. Defendant RANDY JACKSON is employed as CORRECTIONAL OFFICER at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

19. Defendant KENNETH MCMULLIAN is employed as CORRECTIONAL OFFICER at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

20. Defendant JAMES WICHOWSKI is employed as CORRECTIONAL OFFICER at F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446-7917

## DEFENDANTS CONTINUED

21. DEFENDANT  EDITH BAREFOOT       IS EMPLOYED AS EDUCATION SPECIALIST

    _____ AT F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL.
    32446-

22. DEFENDANT ALLEN RAINES       IS EMPLOYED AS  CORRECTIONAL OFFICER

    _____ AT F.C.I. MARIANNA/3625 FCI rd/MARIANNA, FL. 32446

23. DEFENDANT LEVI DAVIS       IS EMPLOYED AS CORRECTIONAL OFFICER

    _____ AT F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446

24. DEFENDANT KENNY LEWIS       IS EMPLOYED AS CORRECTIONAL OFFICER

    _____ AT F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446

25. DEFENDANT DONNIE MERCER       IS EMPLOYED AS CORRECTIONAL OFFICER

    _____ AT F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446

26. DEFENDANT LARRY LONG       IS EMPLOYED AS CORRECTIONAL OFFICER

    _____ AT F.C.I. MARIANNA/3625 FCI RD/MARIANNA, FL. 32446

27. DEFENDANT ROBERT L. MATHEWS    IS EMPLOYED AS SOUTHEAST REGIONAL

    DIRECTOR       AT SOUTHEAST REGIONAL OFFICE/3800 N. CAMP CREEK PKWY.
    ATLANTA, GA.30331-5099

28. DEFENDANT CAROLYN V. RICKARDS   IS EMPLOYED AS SOUTHEAST REGIONAL ADMI-

    NISTRATIVE REMEDY COORDINATOR AT 3800 NORTH CAMP CREEK PKWY. ATLANTA, GA.
    30331-5099

29. DEFENDANT L. JENKINS       IS EMPLOYED AS SOUTHEAST REGIONAL ADMI-

    NISTRATIVE REMEDY COORDINATOR AT 3800 NORTH CAMP CREEK PKWY. ATLANTA, GA.
    30331-5099

## DEFENDANTS CONTINUED

30. DEFENDANT T. J. BONDURANT IS EMPLOYED AS ASSISTANT INSPECTOR GENERAL

INVESTIGATIONS DIVISIONS AT U.S. DEPT. OF JUST. BOX 27718, WASHINGTON, D.C.
20038-7718

STATEMENT OF CLAIM CONTINUED

(B) ON 7-22-99, MR. TROUTMAN AND MR. KESLER IMPROPERLY SERVED AS MY UNIT DISCI-
PLINARY COMMITTEE, DISREGARDING THE OBVIOUS CONFLICT OF INTEREST AND BIASEDLY DENIED
ME THE RIGHT OF PROPERLY PREPARING FOR THAT HEARING. THEY ERRONEOUSLY REFUSED MY RE-
QUEST THAT THEY BOTH EXCUSE THEMSELVES BECAUSE OF THE FACT THEY BOTH HAD A VERY SIG-
NIFICANT ROLE AND PERSONAL INVOLVEMENT IN THE CHARGES BEING BROUGHT AGAINST ME, IN
FACT, THEY WERE PART OF THE PRE-INVESTIGATION THAT DETERMINED I SHOULD BE CHARGED
WITH THE INCIDENT, THEREFORE, THEY BROUGHT THEIR BIASED OPINION TO THE HEARING WITH
THEM IN TOTAL VIOLATION TO BUREAU POLICY OF ENSURING IMPARTIALITY.

(C) THEY DENIED ME THE RIGHT TO PROPERLY PREPARE FOR THIS HEARING BY UNJUSTLY
REFUSING MY REQUEST FOR AN EXTENSION OF THE HEARING FOR VALID REASONS IN REFERENCE
TO THE FACT THAT AFTER BEING PLACED IN ADMINISTRATIVE DETENTION, I HAD NOT BEEN GIVEN
ANY OF MY LEGAL MATERIALS FROM MY PROPERTY IN PREPARATION OF DEFENDING MYSELF. THEY
REFUSED TO ASK THE PROPERTY ROOM OFFICER FOR VERIFICATION THAT HE HAD NOT HAD TIME
TO HONOR MY REQUEST TO RECEIVE MY LEGAL MATERIALS. AND MOST IMPORTANT, CERTAIN DOCU-
MENTS WOULD HAVE CLEARLY VERIFIED THAT MR. TROUTMAN AND MR. KESLER DID NOT QUALIFY
TO SERVE ON MY DISCIPLINARY HEARING.

(D) SUBSEQUENTLY, AFTER ERRONEOUSLY FINDING ME GUILTY FOR THE INCIDENT, MR.
TROUTMAN ADAMANTLY DENIED MY RIGHT TO DUE PROCESS BY DENYING ME THE RIGHT OF PRO-
PERLY PREPARING TO APPEAL THE CONVICTION AGAINST ME BY REFUSING ME DISCLOSABLE COPIES
FROM MY CENTRAL FILES IN REFERENCE TO MY CONVICTION.

(E) MR. TROUTMAN OUTRIGHT LIED THAT TWO DOCUMENTS HE USED TO CONVICT ME THAT
WAS ATTACHED TO THE INCIDENT REPORT BY THE WRITER, EVER EXISTED. IN FACT, IT'S AC-
TUALLY IRONIC THAT MR. TROUTMAN WOULD IRRATIONALLY GO TO THIS LENGTH IN ORDER TO
UNJUSTLY DENY MY RIGHTS TO DISPUTE THE VERY SAME EVIDENCE THE REPORTING OFFICER WAS
ALLOWED TO USE AGAINST ME. HOWEVER, HE WAS DETERMINED TO DETER MY ACCESS TO THESE
DOCUMENTS BY LYING. ALSO, LT. HARDY KNEW AND READ PARTS OF THESE DOCUMENTS TO ME
WHEN HE BROUGHT ME A COPY OF THE INCIDENT REPORT. AND AFTER MR. TROUTMAN DECEITFULLY
STATED THAT THE DOCUMENTS NEVER EXISTED, I THEN REQUESTED THE DOCUMENTS FROM LT.
HARDY WHO REFERRED ME RIGHT BACK TO MR. TROUTMAN. HOWEVER, IT WAS MR. TROUTMAN WHO
REFERRED ME TO LT. HARDY. APPARENTLY, THEY BOTH CONSPIRED TO SPIN ME AROUND IN CIRCLES
AS MR. TROUTMAN SO PROUDLY PROMISED ME WOULD HAPPEN IN MY ATTEMPTS TO RECEIVE THE DO-
CUMENTS IN QUESTION. THEREFORE, I WAS NOT AFFORDED THE RIGHT TO PROPERLY PREPARE FOR
MY APPEAL OF THE ILLEGAL CONVICTION AGAINST ME, INCLUDING THE ERRONEOUS HEARING HELD
BY UNQUALIFIED UNIT DISCIPLINARY COMMITTEE MEMBERS! (SEE STATEMENT OF CLAIM CONTINUATION)

STATEMENT OF CLAIM CONTINUED

2. THIS CLAIM INVOLVES AN EIGHTH AMENDMENT VIOLATIONS PERTAINING TO CRUEL AND UNUSUAL PUNISHMENT.

(A) ON 7-25-99, MY CASE MANAGER THREATENED ME IN ANGER AND DEFIANCE TO MY EXPECTATIONS FOR HIM TO HONOR MY RIGHTS TO BE GIVEN COPIES OF DOCUMENTS OF DISCLOSABLE NATURE FROM MY CENTRAL FILES WHICH I'M ENTITLED TOO IN ORDER TO PROPERLY PREPARE AN APPEAL OF A UDC DECISION.

(B) ON 7-26-99, I COMPLAINED TO THE ACTING WARDEN ABOUT THE THREAT AND REFUSAL OF CERTAIN DOCUMENTS AND ON 7-27-99, MY CASE MANAGER RETALIATED AND SEVERELY THREATENED ME A SECOND TIME IN REPRISAL AND RETRIBUTION.

(C) OUT OF FEAR, ON 7-28-99, I REQUESTED PROTECTIVE CUSTODY BECAUSE IT WAS OBVIOUS I MADE A MISTAKE COMPLAINING ABOUT THE FIRST THREAT AND ON MY WAY TO THE LIEUTENANT'S WITH MY REQUEST TO BE PLACED IN PROTECTIVE CUSTODY, MY CASE MANAGER THREATENED ME A THIRD TIME IN REFERENCE TO MY PREVIOUS COMPLAINT AGAINST HIM.

3. THIS CLAIM INVOLVES VIOLATIONS OF THE FIFTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS.

(A) ON 7-28-99, LT. RUNYON REFUSED TO HONOR MY REQUEST FOR PROTECTIVE CUSTODY ERRONEOUSLY BECAUSE I REFUSED TO DISCUSS THE EMERGENCY SENSITIVE ISSUES WITH HIM. MY REQUEST CLEARLY STATE MY PREFERENCE TO RESOLVE MY COMPLAINT DIRECTLY WITH THE REGIONAL OFFICE INSTEAD OF THIS INSTITUTION WHICH I HAVE A RIGHT TO DO. HOWEVER, LT. STRADER, INVESTIGATIVE LT., INTERVENED AND ALLOWED ME TO BE PLACED IN PROTECTIVE CUSTODY.

4. THIS CLAIM INVOLVES VIOLATIONS OF THE EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT.

(A) ON 7-28-99, AFTER I WAS PLACED IN PROTECTIVE CUSTODY AND PUT IN A STRIP SEARCH CELL, I WAS FORCED TO LAY ON A COLD TILED FLOOR FOR APPROXIMATELY 2 OR 3 HOURS BECAUSE OFFICER MCDANIELS CLAIMED THERE WAS WAX ON THE FLOOR.

(B) SUBSEQUENTLY, I WAS THEN PUT IN A CELL WITH A LEAKING TOILET THAT DID NOT FLUSH BUT ONLY OCCASIONALLY. THE FLOOR AROUND THIS TOILET HAD A CONSTANT MILDEWED PUDDLE OF HIGHLY UNSANITARY WATER. THE FOLLOWING DAY, 7-29-99, OFFICER MCDANIEL ACTUALLY REVIEWED THIS HORRENDOUS CONDITION BUT CLAIMED HE COULD NOT GET THE TOILET FIXED AT THAT TIME. HOWEVER, I STAYED IN THA CELL FOR 16 DAYS WITHOUT THAT TOILET EVER BEING FIXED, IN FACT, SEVERAL TIMES I HAD TO SLEEP WITH A BOWL FULL OF FECES I COULDN'T FLUSH.

5. THIS CLAIM INVOLVES VIOLATIONS OF THE FIFTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS.

(A) REGARDLESS OF MY STATUS OF PROTECTIVE CUSTODY AND MY RIGHT TO RESOLVE DIRECTLY WITH THE REGIONAL DIRECTOR, ON 8-9-99, OFFICER JAMES WICHOWSKI ATTEMPTED TO FORCE ME INTO POPULATION AGAINST MY WISHES, ERRONEOUSLY CHANGING MY STATUS FROM PROTECTIVE CUSTODY TO ADMINISTRATIVE DETENTION. MR. WICHOWSKI DID NOT HAVE THE RIGHT OR AUTHORITY TO MAKE SUCH A JUDGEMENT BEFORE A DECISION WAS RENDERED BY THE REGIONAL OFFICE.

(B) AS A RESULT OF MY REFUSAL TO BE DENIED DUE PROCESS AND BE FORCED INTO POPULATION, OFFICER WICHOWSKI WROTE ME AN INCIDENT REPORT FOR REFUSING PROGRAM ASSIGNMENTS. AND THE INVESTIGATIVE LT. PUESCHEL WHO DELIVERED THE INCIDENT REPORT, INCOMPETENTLY FAILED TO EXPUNGE IT.

STATEMENT OF CLAIM CONTINUED

6. THIS CLAIM INVOLVES VIOLATIONS OF THE EIGHTH AMENDMENT AGAINST CRUEL AND UNUSUAL PU-
NISHMENT THAT WAS SPECIFICALLY ADMINISTERED IN ORDER TO INFLICT PHYSICAL PAIN, DEFYING THE
MEDICAL STAFF ORDERS FOR MY POST-SURGERY AFTERCARE.

(A) ON 8-31-99, OFFICER KEITH MCDANIELS CAME TO MY CELL AND CONFISCATED MY MATTRESS, DIS-
REGARDING MY MEDICAL CONDITION AND DOCTOR'S ORDERS TO THE CONTRARY. THIS IS AN OUTRAGEOUS A-
BUSE OF AUTHORITY IN THE HANDS OF A SADISTIC AND UNSCRUPULOUS ADMINISTRATION WHERE POWER TO
PUNISH IS GRANTED TO PERSONS IN LOWER LEVELS OF ADMINISTRATIVE AUTHORITY.

(B) MR. McDANIELS CLAIMED THE WARDEN HAS STARTED A NEW THING CONCERNING MY PREDICAMAENT,
SO HE WAS INSTRUCTED TO TAKE MY MATTRESS. MR. McDANIELS KNOWINGLY IGNORED MY MEDICAL CONDI-
TION, INCLUDING DOCTOR'S ORDERS IN CONCERN OF MY POST SURGERY AFTERCARE, SPECIFICALLY CON-
TRARY TO TAKING MY MATTRESS. FURTHER, PRISON OFFICIALS HAVE THE DUTY, IMPOSED BY STATUTE, TO
PROVIDE THEIR INMATES WITH THE BASIC NECCESSITIES OF LIFE SUCH AS MEDICAL CARE AND BEDDING.
HOWEVER, THIS MALICIOUS TORTURE WAS DELIBERATELY COMMITTED AGAINST ME BECAUSE OF MY KNOWN ME-
DICAL CONDITION OF THE LOWER BACK SPINAL COLUMN THAT HAS TWO HERNIATED DEGENERATIVE DISC THAT
LIKELY REQUIRES FURTHER SURGERY. IN FACT, THIS CORPORAL PUNISHMENT IN THE FORM OF ILLEGAL
TORTURE, WAS COMMITTED AS A WILLFUL ACT OF INHUMANITY, WANTONLY PRESCRIBED AS AN ATTEMPT TO
VICIOUSLY FORCE ME INTO POPULATION, BLATANTLY VIOLATING MY RIGHTS TO PROCEDURAL DUE PROCESS
AND CRUEL AND EXTREMELY UNUSUAL PUNISHMENT.

7. THIS CLAIM INVOLVES DISPARATY, DISCRIMINATION, AND A VIOLATION OF MY FIFTH AMENDMENT
RIGHT TO PROCEDURAL DUE PROCESS.

(A) ON 9-3-99, MR. McDANIELS CAME TO MY CELL AND INFORMED ME THAT A BED SPACE WAS AVAIL-
ABLE IN CREEK UNIT AND THEN ORDERED ME TO PACK MY PROPERTY TO BE RELEASED.

(B) WHEN I REFUSED THIS VIOLATION OF MY RIGHTS, CONSIDERING MY EMERGENCY SENSITIVE COM-
PLAINT TO THE REGIONAL DIRECTOR HAD NOT BEEN RESOLVED OR RESPONDED TO BY THE REGIONAL OFFICE,
MR. McDANIELS HAD NO RIGHT TO WRITE ME AN INCIDENT REPORT, OR ATTEMPTING TO FORCE ME INTO POP-
ULATION AGAINST MY WILL.

(C) OFFICER D. McKINNEY DELIVERED THE INCIDENT REPORT AND FAILED IN HIS DUTY OF INVESTI-
GATING THIS INCIDENT REPORT, BECAUSE UPON ANY INVESTIGATION, MR. McKINNEY WOULD HAVE VERIFIED
THAT I HAVE A RIGHT TO ATTEMPT RESOLVING MY SENSITIVE COMPLAINT DIRECTLY TO THE REGIONAL DI-
RECTOR, INCLUDING MY PROCEDURAL RIGHTS OF REFUSING TO DISCUSS THE SENSITIVE ISSUES WITH THIS
INSTITUTIONAL ADMINISTRATION. THEREFORE, MR. McKINNEY NEGLIGENTLY FAILED TO RIGHTFULLY EX-
PUNGE THAT FRIVOLOUS INCIDENT REPORT.

8. THIS CLAIM INVOLVES EXTREMELY EXCESSIVE ABUSE OF AUTHORITY AND VIOLATIONS OF MY FIFTH
AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS AND MY EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UN-
USUAL PUNISHMENT OF INTENTIONAL TORTURE.

STATEMENT OF CLAIM CONTINUED

(A) AS A RESULT OF MY REFUSING TO BE ILLEGALLY FORCED INTO POPULATION 9-3-99, THE FOLLOW-ING DAY ON 9-4-99, OFFICERS R. JACKSON AND K. McMULLIAN CAME TO MY CELL AND TOOK MY MATTRESS THAT MORNING, BUT DID NOT RETURN IT AT 3:30pm, BEFORE THEIR SHIFT ENDED AS THEY USUALLY DID.

(B) ACCORDINGLY, I COULD ONLY ASSUME BECAUSE NOBODY BOTHERED TELLING ME THIS TIME, THAT BECAUSE OF REFUSAL THE PREVIOUS DAY, THAT THE WARDEN HAS STARTED YET ANOTHER NEW THING PER-TAINING TO MY PREDICAMENT.  THEREFORE, AND BEING THE WEEKEND, I PLANNED ON QUESTIONING MR. McDANIELS, (SENIOR OFFICER) THAT FOLLOWING MONDAY, 9-6-99, IN CONCERN OF THIS NEW DEVELOPMENT HOWEVER, MR. McDANIELS DID NOT REPORT TO WORK THAT MONDAY, TUESDAY, WEDNESDAY, OR THURSDAY.

(C) ON 9-9-99, I GAVE OFFICER M. JENNINGS A REQUEST COMPLAINT IN CONCERN OF THE PERMA-NENT CONFISCATION OF MY MATTRESS.  OFFICER JENNINGS FAILED TO RETURN TO MY CELL OR RESPOND TO MY REQUEST.  THEREFORE, THE FOLLOWING DAY, 9-10-99, I GAVE A REQUEST COMPLAINT TO THE SENIOR OFFICER, MARCUS BASFORD, WHO APPARENTLY TOOK THE POSITION OF OFFICER McDANIELS.  HE ALSO VIOLATED BUREAU POLICY BY FAILING TO RESPOND TO MY REQUEST AS IS HIS DUTY. IRONICALLY THOUGH, MR. BASFORD AND MR. McMULLIAN (WHO WAS ONE OF THE TWO WHO TOOK MY MATTRESS AND KNEW DARN WELL THEY DIDN'T RETURN IT) BOTH CAME TO MY CELL AND RIDICULOUSLY ASKED ME WHAT HAPPENED TO MY MATTRESS?  IT'S LUDICROUS HOW OFFICER McMULLIAN FAKED AS IF HE DIDN'T REMEMBER TAKING MY MATTRESS, DELIBERATELY SUBJECTING ME TO WILLFUL DEPRIVATION OF MY RIGHTS WITH MALICIOUS INTENT.  OTHERWISE, "WHY DIDN'T ANY OF THOSE DAY SHIFT OFFICERS COME TO MY CELL TO RETRIEVE THE MATTRESS ON THE MORNINGS OF SEPTEMBER 5, 6, 7, 8, 9, OR 10, 1999?  ISN'T THAT MYSTERIOUS? THE ANSWER TO THAT QUESTION OBVIOUSLY ELIMINATES THEIR FAILED ATTEMPT TO FALSELY CLAIM THEY INNOCENTLY WAS UNAWARE OF MY NOT HAVING A MATTRESS.  THEY STILL COVERED IT UP BY LYING AND DENYING THE FACTS, AND EVEN ATTEMPTED TO SAY IT WAS MY FAULT AND THAT I WAS THE ONE LYING. NEVERTHELESS, THEY COULD NOT JUSTIFY WHY THERE WAS NO MATTRESS IN MY CELL OR IN THE HALLWAY THE MORNING OF 9-10-99!  MIRACULOUSLY, BEFORE THE SHIFT ENDED, MR. McMULLIAN BROUGHT THE VERY SAME MATTRESS TO MY CELL THAT HE TOOK OUT OF IT ON 9-4-99, THAT I HAD BEEN SLEEPING ON FOR WEEKS.  IT HAD THE SAME LOT NUMBERS AND STAINS AND TEARS AND SNAGS, WITHOUT A DOUBT!

9. THIS CLAIM INVOLVES RETALIATORY VIOLATIONS OF MY EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT.

(A) ON 9-13-99, SINCE I FOUND OUT THAT THERE WAS NO INSTRUCTIONS FOR MY MATTRESS TO HAVE BEEN PERMANENTLY TAKENED BY THOSE CORRUPT OFFICERS, I GAVE THE SPECIAL HOUSING LIEUTENANT, MR. TINCHER, A COMPLAINT REVEALING THE MISCONDUCT OF THE OFFICERS INVOLVED.

(B) AS A REPRISAL AND IN RETALIATION TO MY COMPLAINT TO THE LIEUTENANT, IRONICALLY, OFFI-CER WICHOWSKI TOOK MY MATTRESS THAT VERY SAME DAY, 9-13-99, AND NEVER RETURNED IT.  THE FOLLOW-ING MORNING, 9-14-99, OFFICER R. JACKSON CAME TO RETRIEVE THE MATTRESS FROM MY CELL AND I EX-PLAINED TO HIM THAT MR. WICHOWSKI DID NOT RETURN IT TO ME THE PREVIOUS DAY.  MR. JACKSON STA-TED THAT HE WAS GOING TO REPORT IT TO LT. TINCHER.

STATEMENT OF CLAIM CONTINUED

10. THIS CLAIM INVOLVES VIOLATIONS OF THE EIGHTH AMENDMENT AGAINST CRUEL AND UNUSUAL PUNISHMENT.

(A) ON 10-15-99, OFFICERS D. BRYANT AND A. RAINES, TOOK THE MATTRESS FROM MY CELL AND DID NOT RETURN IT BEFORE THEIR SHIFT ENDED. HOWEVER, THEY NEVER DO, THEREFORE, THE NEXT SHIFT OFFICERS, MR. OLDS AND MR. DAVIS USUALLY PUT THE MATTRESS IN MY CELL AFTER THEY PICK UP THE SUPPER TRAYS APPROXIMATELY 5:30pm. AFTER PICKING UP THE TRAYS, I NOTICED MR. L. DAVIS DID NOT PUT THE MATTRESS IN MY CELL SO I ASKED HIM WOULD HE PLEASE RETURN MY MATTRESS? MR. DAVIS STATED TO ME THAT HE WAS THE ONLY OFFICER WORKING THE NIGHT OF 10-15-99, AND THAT HE COULD NOT RETURN MY MATTRESS AS USUAL BECAUSE HE DID NOT HAVE A KEY TO OPEN MY CELL. MR. DAVIS FURTHER STATED THAT HE HOPES NOBODY START DYING BECAUSE IF SO, THERE WOULD BE NOTHING HE COULD DO ABOUT IT. THERE'S ALWAYS ONLY ONE OFFICER WORKING THE MIDNIGHT SHIFT SO I COULD NOT GET THE MATTRESS ON THAT SHIFT EITHER.

(B) THE FOLLOWING MORNING, 10-16-99, APPROXIMATELY 6:30am, DURING BREAKFAST, BOTH OFFI-CERS BRYANT AND RAINES, LOOKED AT THE MATTRESS AND SHOOK THEIR HEADS BUT WOULD NOT EVEN APO-LOGIZE OR EVEN ACKNOWLEDGE THEIR MISDEEDS IN MY PRESENCE. IN FACT, THEY IGNORED THE MATTRESS AND LEFT IT IN THE HALLWAY ALL DAY. BEFORE THE SHIFT ENDED, ODDLY, OFFICER BRYANT RETURNED THE MATTRESS TO MY CELL AND WOULD NOT EVEN LOOK ME IN THE EYE.

11. THIS CLAIM INVOLVES VIOLATIONS OF THE EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UN-USUAL PUNISHMENT.

(A) CONTRARY TO THE LIE TOLD BY OFFICER WICHOWSKI, THE WEEK OF SEPTEMBER 5-11, 1999, I ONLY RECEIVED TWO SHOWERS INSTEAD OF THE THREE THATS REQUIRED. TUESDAY, SEPTEMBER 7, 1999, WAS ONE OF OUR NORMAL SHOWER DAYS BUT THAT MONDAY WAS A HOLIDAY, SO WE WERE TOLD THAT THEY DIDN'T HAVE A CHANGE OF LAUNDRY FOR US AS OF YET THAT MORNING. HOWEVER, THE LAUNDRY CAME IN AT 11:30am. THAT AFTERNOON, WE INQUIRED ABOUT OUR SHOWERS AND WERE TOLD THAT THE NEXT SHIFT WOULD BE GIVING US OUR SHOWERS. THE NEXT SHIFT REFUSED TO GIVE US SHOWERS BECAUSE THE DAY SHIFT ARE REQUIRED TO HANDLE SHOWERS. THE FOLLOWING DAY, WE ASKED OFFICER WICHOWSKI TO GIVE US OUR SHOWERS AND HE LIED THAT HE WOULD WHEN HE GOT AROUND TO IT, HOWEVER, HE NEVER GAVE ANY SHOWERS. MOST OF US TOOK OUR SECOND SHOWER ON THURSDAY, 9-9-99, WITH THE EXCEPTION OF JOHN SARMIENTO (INMATE) AND HIS ROOMATE, WICHOWSKI HAD THEM GET READY BUT NEVER TOOK THEM TO THE SHOWER. THEREFORE, AT THIS TIME WICHOWSKI KNEW HE HAD ONLY GIVEN US TWO SHOWERS THAT WEEK, AND WHEN WE ASKED ABOUT OUR THIRD SHOWER, ALL HE WOULD SAY WAS "I'LL SEE! ON THE LAST DAY OF THE WEEK, SATURDAY, 9-11-99, WE ASKED TO TAKE OUR SHOWERS AND OFFICER WICHOWSKI SAID HE WOULD SEE WHAT HE COULD DO, INSTEAD, HE MADE UP A MISSED RECREATIONAL DAY AND REFUSED THE MUCH MORE IMPORTANT SHOWER DAY WE MISSED, THEREFORE, WHEN MOST OF US TOOK TWO SHOWERS, MR. SARMIENTO AND HIS ROOMMATE ONLY TOOK ONE SHOWER THAT WEEK. MR. WICHOWSKI THEN ALTERED THE LOG BOOK TO INDICATE THAT WE TOOK THREE SHOWERS THAT WEEK, AND THEN HE LIED TO LT. TINCHER AND MY COUNSELOR CONCERNING THIS ISSUE.

(3E)

STATEMENT OF CLAIM CONTINUED

(B) BETWEEN 8-19-99, and 9-9-99, I HAD NOT BEEN GIVEN THE OPPORTUNITY TO CHANGE ANY LINEN AS WE NORMALLY DO ONCE A WEEK. AND THERE AGAIN, THE LOG BOOKS WAS ALTERED TO INDICATE THAT I REFUSED LINEN CHANGE IN BETWEEN THOSE WEEKS.  AND A DIFFERENT RESPONSE THAT I GOT STATED THAT I DID SO CHANGE LINEN EVERY WEEK.

(C) ON THE DAY I REPORTED TO DETENTION, 7-28-99, I WAS NOT GIVEN A BLANKET UNTIL 9-23-99. THE OFFICER WHO FINALLY GAVE ME THE BLANKET, REFUSED TO RESPOND TO MY REQUEST FORM VERIFYING HIS GIVING ME A BLANKET.  HOWEVER, IT IS SO LUDICROUS THAT ALL THESE STAFF MEMBERS HAVE TO DO IS LIE AND THAT ABSOLUTELY GOOD ENOUGH BECAUSE WE AS INMATES IS NOT CONSIDERED TO BE HUMAN BEINGS WITH NO RIGHTS WHATSOEVER, AND OUR WORD IS EQUIVALENT TO A PIECE OF DUNG.  FOR EXAMPLE, INSTEAD OF LT. TINCHER QUESTIONING ANY OF THE 50-60 INMATES IN CONCERN OF THE MISSED SHOWER, HE BIASEDLY ACCEPTED OFFICER WICHOWSKI LIES AND FAILED TO QUESTION EVEN ONE INMATE IN VERIFI- CATION TO OUR FACTUAL CLAIMS THAT WICHOWSKI FORGED THE LOG BOOK TO COVERUP HIS MISCONDUCT!

12. THIS CLAIM INVOLVES FIFTH AMENDMENT VIOLATIONS OF THE PLAINTIFF'S RIGHTS TO PROCEDURAL DUE PROCESS.

(A) ON AUGUST 24, 1999, THE PLAINTIFF FILED AN EMERGENCY SENSITIVE COM- PLAINT TO THE REGIONAL DIRECTOR, (SOUTHEAST), INTERNAL AFFAIRS, AND THE OFFICE OF PROFESSIONAL RESPONSIBILITY, INCLUDING THREE AMENDED COMPLAINTS TO INTERNAL AFFAIRS  AND THE OFFICE OF PROFESSIONAL RESPONSIBILITY.

(B) THE REGIONAL DIRECTOR RECEIVED THE PLAINTIFF'S SENSITIVE COMPLAINT ON AUGUST 27, 1999, (EXHIBIT-A).  PURSUANT TO BUREAU POLICY, WHEN AN INMATE CHOOSE TO FILE AN INITIAL SENSITIVE COMPLAINT DIRECTLY TO THE REGIONAL DIREC- TOR, THE DIRECTOR IS REQUIRED TO MAKE THE FIRST DECISION PERTAINING TO THE COMPLAINT AND UPON THE DETERMINATION, SEND THE PLAINTIFF THAT DETERMINATION IN WRITING. (EXHIBITS-V & W)

(C) THE REGIONAL OFFICE HAS YET TO RESPOND T O  THE PLAINTIFF'S COMPLAINT, THEREFORE, THE INSTITUTIONAL STAFF HAS ABUSED AND HAS NO AUTHORITY TO DISCRIMI NATELY CHANGE THE PLAINTIFF'S STATUS FROM PROTECTIVE CUSTODY, SUBSEQUENTLY, TO DISCIPLINARY SEGREGATION ON THREE OCCASIONS.  AND EACH OCCASION, THE PLAINTIFF IS SANCTIONED MORE SEVERELY ON THE BASIS OF RECURRING OFFENSES.

13. THIS CLAIM INVOLVES FIFTH AND EIGHTH AMENDMENTS VIOLATIONS OF THE PLAINTIFF'S RIGHTS TO PROCEDURAL DUE PROCESS AND CRUEL AND UNUSUAL PUNISHMENT.

(A) THE PLAINTIFF HAVE RECEIVED THREE ERRONEOUS AND CONSECUTIVE DISCIPLI- INCIDENT REPORTS, FALSELY, FOR REFUSING PROGRAM ASSIGNMENTS AS A RESULT OF THE PLAINTIFF'S REFUSAL TO BE DENIED DUE PROCESS RIGHTS.

## STATEMENT OF CLAIM CONTINUED

(B) ALL THREE FRIVOLOUS INCIDENT REPORTS WAS WITHOUT THE PROPER AUTHORITY
TO DO SO BECAUSE THE REGIONAL DIRECTOR HAS YET TO RESPOND TO THE PLAINTIFF
SENSITIVE COMPLAINT. THEREFORE, THE DEFENDANTS ACTIONS ARE BIASEDLY INSUBOR-
DINATE, AND IN VIOLATION OF BUREAU POLICY TO ATTEMPT FORCING THE PLAINTIFF INTO
THE GENERAL POPULATION, WHILE IN PROTECTIVE CUSTODY.

(C) THE UNIT DISCIPLINARY COMMITTEE AND THE DISCIPLINARY HEARING OFFICER,
TOGETHER, INCOMPETENTLY CONVICTED THE PLAINTIFF AND SUBSEQUENTLY, SANCTIONED
THE PLAINTIFF TO MORE SEVERE PUNISHMENT ON EACH CONVICTION, ON THE BASIS OF A
RECURRING OFFENSE. INCLUDING, LOSS OF GOOD CONDUCT TIME, LOSS OF TELEPHONE,
LOSS OF VISITATION, AND DISCIPLINARY SEGREGATION. AND IN RETALIATION AS COR-
PORAL PUNISHMENT OF TORTURE, AN ILLEGAL LOSS OF MATTRESS UNDER THE DISGUISE
OF A PRIVILEGE, HOWEVER, A MATTRESS IS A RIGHT BY STATUTE! FURTHERMORE, THIS
REPRISAL LOSS OF MATTRESS IS DIRECT DISOBEDIENCE AND VIOLATION OF DOCTORS
ORDERS PERTAINING TO PLAINTIFF'S MEDICAL CONDITION AND POST—SURGERY AFTERCARE.
(SEE EXHIBIT—S)

14. THIS CLAIM INVOLVES FIFTH AND EIGHTH AMENDMENT VIOLATIONS.

(A) THE PLAINTIFF WAS HELD IN DISCIPLINARY SEGREGATION AFTER COMPETION
OF HIS DISCIPLINARY TIME ON 10-17-99, UNTIL 10-18-99.

(B) IN RETRIBUTION AND INTENTIONAL DECEPTION, THE PLAINTIFF IS BEING
DENIED PERSONAL BELONGINGS THAT IS ALLOWED IN ADMINISTRATIVE DETENTION, DIS-
PARATELY DISCRIMINATING ON THE PLAINTIFF IN RETALIATION OF THE PLAINTIFF'S
REFUSAL TO BE BRIBED AND COERCED INTO THE GENERAL POPULATION, DISREGARDING
THE PLAINTIFF'S SAFETY AND WELLBEING, AS WELL AS RIGHTS TO PROCEDURAL DUE PRO-
CESS.

(C) PLAINTIFF IS ALSO SUDDENLY BEING DENIED LAW LIBRARY ATTENDANCE SINCE
10-21-99, AS A REPRISAL TO THE PLAINTIFF'S REFUSAL OF THE DEFENDANTS FINAL
ATTEMPT OF BRIBERY AND COERCION THE PREVIOUS DAY OF 10-20-99. (SEE EXHIBIT—31)
AS A RESULT OF PLAINTIFF'S COMPLAINTS OF THIS SUDDEN RETALIATORY REFUSAL OF
THE LAW LIBRARY, THE DEFENDANTS REALIZED THEIR FALSE CLAIMS OF NUMEROUS INMATES
BEFORE THE PLAINTIFF COULD NOT BE SUBSTANTIATED BECAUSE THERE'S VERY FEW INMATE
THAT REQUEST THE USE OF THE LAW LIBRARY. THEREFORE, THE DEFENDANTS HAVE SCHEM-
ED AND RECRUITED ANOTHER CO—CONSPIRATOR TO INSTANTLY INFLICT A DIFFERENT TACTIC
OF DISPARATE DISCRIMINATION, IN HOPES OF FURTHER DISCOURAGING THE PLAINTIFF'S
LEGAL FILINGS THAT MIGHT ENCOURAGE THE PLAINTIFF TO UNJUSTLY RETURN TO THE
GENERAL POPULATION.

STATEMENT OF CLAIM CONTINUED

15. THIS CLAIM INVOLVES VIOLATIONS OF THE PLAINTIFF'S **FIFTH** AND EIGHTH
AMENDMENT RIGHTS.

(A) DEFENDANT E. BAREFOOT, ADAMANTLY REFUSED THE PLAINTIFF ANY ASSISTANCE
WHATSOEVER FROM THE GENERAL POPULATION LAW LIBRARY AND/OR THE INMATE LAW CLERKS
WHO ROUTINELY ASSIST THE ENTIRE POPULATION WITH THE VERY SAME INFORMATION THE
PLAINTIFF REQUESTED. PLEASE TAKE NOTICE THAT THIS DISCRIMINATE DISPARATY ONLY
AND SUDDENLY BEGAN ON 11-2-99, SPECIFICALLY SUITED FOR THE PLAINTIFF, IN RETA-
LIATION. THIS IS NOT **ONLY** A VIOLATION OF THE PLAINTIFF'S ABOVE CONSTITUTIONAL
RIGHTS, BUT ALSO A VIOLATION OF THE BUREAU OF PRISONS REGULATIONS PURSUANT TO
PROGRAM STATEMENT 5270.07, SECTION 541.12 (8). THE PLAINTIFF HAVE A RIGHT TO
ASSISTANCE, ESPECIALLY WHEN THE CONFINEMENT LAW LIBRARY IS HIGHLY INADEQUATE
AND DO NOT OBTAIN THE INFORMATION THE SEEKS.

(B) FOR MORE THAN FOUR YEARS, THE PLAINTIFF HAVE UTILIZED THE ASSISTANCE
OF THE INMATE LAW CLERKS, INCLUDING, SINCE 7-28-99, WHILE BEING IN CONFINEMENT
BY SENDING REQUESTS TO TWO EDUCATIONAL STAFF MEMBERS, MR. McCORMICK AND MRS.
WALDRON. HOWEVER, MS BAREFOOT INTERCEPTED MY LAST TWO REQUESTS TO MRS. WALDRON
STRATEGICALLY IN PLANS WITH THE DEFENDANTS CONQUEST TO FRUSTRATE THE PLAINTIFF
TO FORFEIT HIS RIGHTS TO PROCEDURAL DUE PROCESS.

(C) MS. BAREFOOT FALSELY ALLEGES THAT SINCE THE PLAINTIFF IS FILING IN
HIS OWN BEHALF, ITS THE PLAINTIFF'S RESPONSIBILITY TO OBTAIN THE INFORMATION
REQUESTED HIMSELF, DISREGARDING THE FACT THAT THE INFORMATION CANNOT BE FOUND
IN THE INSUFFICIENT LAW LIBRARY IN SPECIAL HOUSING UNIT. ALSO, MS. BAREFOOT
AGAIN FALSELY CLAIMS ON THE SECOND REQUEST, THAT THE INFORMATION REQUESTED
APPEARS TO BE INCLUDED IN THE TITLE 28 USC 1331-1346 FORM. HOWEVER, THAT IS
A VERY UNTRUE STATEMENT, AS THERE IS NO SUCH INFORMATION WHATSOEVER PERTAINING
TO FILING A LIEN, INCLUDED IN A TITLE 28 USC 1331-1346 CIVIL ACTION.

16. THIS CLAIM INVOLVES EIGHTH AMENDMENT VIOLATIONS.

(A) THE PLAINTIFF HAS BEEN AT THIS INSTITUTION SINCE JUNE, 1995. INMATES
IN CONFINEMENT HAS ALWAYS HAD THE USE OF THE ELECTRIC TYPEWRITER TO TYPE LEGAL
DOCUMENTS TO THE COURTS. HOWEVER, IN YET ANOTHER TACTIC AND CONTRIVED PLOT
BY THE DEFENDANTS, MS. BAREFOOT, ONLY THREE DAYS AFTER REFUSING THE PLAINTIFF
ANY LEGAL ASSISTANCE, HAS NOW REFUSED TO REPLACE THE RIBBON IN THE ELECTRIC
TYPEWRITER, BUT INSTEAD, PUT A RIBBON IN THE ANCIENT INADEQUATE MANUAL TYPE-
WRITER. THERE'S NUMEROUS DEFAULTS IN THE MANUAL TYPEWRITER, HOWEVER, THIS
SUDDEN CHANGE FROM YEARS OF THE ELECTRIC TYPEWRITER USE IS IS DIRECTED SPECI-
FICALLY AT THE PLAINTIFF, IN RETALIATION, RETRIBUTION, AND AS REPRISAL OF THE
PLAINTIFF'S REFUSAL TO BE BRIBED AND COERCED NOT STAND UP FOR HIS RIGHTS.

(3H)

STATEMENT OF CLAIM CONTINUED

17. THIS CLAIM INVOLVES VIOLATION OF THE EIGHTH AMENDMENT AGAINST VERY CRUEL AND UNUSUAL PUNISHMENT.

(A) THIS GROSS TYPE OF DISCRIMINATION MAKES IT IMPERATIVE THAT THE PLAINTIFF MUST GET THIS CASE AND INJUNCTION BEFORE THE COURTS WITHOUT ANY FURTHER DELAY. DEFENDANT DONNIE MERCER, ON 11-7-99, AT 1:30am, SENSELESSLY REFUSED TO ISSUE THE PLAINTIFF TOILET TISSUE IN EXCHANGE FOR AN EMPTY TOILET ROLL AS IS STANDARD ROUTINE IN CONFINEMENT. FURTHER, MR. MERCER WAS BOISTEROUSLY IRRATIONAL AND ARGUMENTIVE AND ACCUSED THE PLAINTIFF OF WAITING TO HIS SHIFT CAME TO WORK TO THEN ASK FOR TOILET TISSUE.

(B) NORMALLY, THE SECOND SHIFT WILL ISSUE SUPPLIES SUCH AS WRITING PAPER, ENVELOPES, TOOTHPOWDER, TOOTHBRUSH, ETC., INCLUDING TOILET TISSUE IF THE INMATE HAS AN EMPTY ROLL. HOWEVER, IN CONSIDERATION THAT TOILET PAPER IS ONLY ISSUED UPON AN EMPTY ROLL, THERE IS NO STANDARD SHIFT TO ISSUE TOILET PAPER. HOWEVER, MR. MERCER RUDELY WOULD NOT LISTEN TO REASON, AND STATED TO THE PLAINTIFF THAT THE PLAINTIFF SHOULD HAVE GOTTEN TOILET PAPER ON ANOTHER SHIFT AND THAT ITS JUST TOO BAD BECAUSE HE WAS NOT GIVING THE PLAINTIFF ANY TOILET TISSUE WHATSOEVER.

(C) THIS RUTHLESS BEHAVIOR CAUSED THE PLAINTIFF TREMENDOUS PAIN AND SUFFERING BECAUSE NOT HAVING ANY OTHER CHOICE, THE PLAINTIFF HAD TO TWICE RESULT TO USING NOTEBOOK PAPER IN SUBSTITUTION TO TOILET PAPER, WHICH AGGRAVATED THE PLAINTIFF'S HEMORRHOIDS TO EXCESSIVELY BLEED AND INFLAME BECAUSE OF THE OBVIOUS IRRITATION INFLICTED BY THE HARSH NOTEBOOK PAPER.

(D) THE PLAINTIFF IS ALWAYS UP UNTIL 3:00am OR 4:00am, DOING LEGAL WORK, AND HAS NEVER HAD ANY PROBLEM WITH ANY OTHER OFFICER UPON PRESENTING AN EMPTY TOILET ROLL FOR AN EXCHANGE OF A NEW ROLL. IRONICALLY, TWO MONTHS AGO, MR. MERCER WAS WORKING ONE NIGHT A WEEK DOWN IN CONFINEMENT ON THE GRAVEYARD SHIFT AND ISSUED ME A ROLL OF TOILET TISSUE UPON AN EMPTY ROLL, WITHOUT CHANGING ONE WORD WHATSOEVER. HOWEVER, ITS COMMON KNOWLEDGE FROM SEVERAL SUPERIOR ADMINISTRATIVE STAFF, THAT THE PLAINTIFF IS NO LONGER CONSIDERED HUMAN AND CAN BE TORTURED, DISCRIMINATED UPON, AND TREATED LIKE A DOG, WITH UNLIMITED IMMUNITY TO WHOEVER COMMITT THESE ATROCIOUS ACTS, AS THE PLAINTIFF HAS SO ILLUSTRATED THROUGHOUT THIS ENTIRE CASE.

## STATEMENT OF CLAIM CONTINUED

18. THIS CLAIM INVOLVES FIFTH AMENDMENT VIOLATIONS OF PROCEDURAL DUE PROCESS BY THE CENTRAL OFFICE IN WASHINGTON, D.C.

(A) SEE EXHIBIT-38, PLEASE NOTICE THE TOP PAGE, RECEIPT FROM THE SOUTHEAST REGIONAL OFFICE, DATED 9-9-99. THEIR RESPONSE DUE DATE WAS 10-9-99. However, THE REGIONAL OFFICE NEVER REQUESTED AN EXTENTION AND NEITHER DID THEY RESPOND WITHIN THE TIMEFRAME ALLOWED. THE PLAINTIFF HAVE A RIGHT TO FORWARD HIS APPEAL TO THE NEXT LEVEL (CENTRAL OFFICE), ACCEPTING THE REGIONS NON-RESPONSE AS A DENIAL, AS IS POLICY. ON THE FIRST STATEMENT OF THE CENTRAL OFFICE APPEAL, THE PLAINTIFF CLEARLY STATES THIS FACT, HOWEVER, THE CENTRAL OFFICE BIASEDLY AND ERRONEOUSLY REJECTED THE PLAINTIFF'S APPEAL ON THE BASIS THE PLAINTIFF DID NOT INCLUDE A COPY OF THE REGIONAL APPEAL THE PLAINTIFF NEVER DID RECEIVE ON TIME. HOW COULD THE PLAINTIFF BE EXPECTED TO INCLUDE THEIR RESPONSE WHEN THEY NEVER RESPONDED, A FACT THE CENTRAL OFFICE IGNORED.

19. THIS CLAIM INVOLVES EIGHTH AMENDMENT VIOLATIONS.

(A) SEE EXHIBIT-39, THE DEFENDANTS HAS FAILED TO CHANGE THE PLAINTIFF'S LINEN REPEATEDLY ONCE PER WEEK AS IS POLICY. THE THREE REQUESTS OF THE ABOVE EXHIBIT HAS BEEN TO NO AVAIL. OFFICERS D. BRYANT AND MR. BARKLEY ALSO FAILED TO RESPOND TO THE PLAINTIFF'S REQUESTS IN CONCERN OF THE MATTER OR CORRECT THE VIOlations .

(B) THIS MISCONDUCT HAS BEEN GOING ON FOR TWO WEEKS IN A ROW. DEFENDANTS FAILED TO CHANGE THE PLAINTIFF'S LINEN ON 10-28-99, WHICH WAS ONE WEEK OF THE SAME LINEN. ON 10-30-99, OFFICER BRYANT FAILED TO CORRECT THE SITUATION OR RESpond TO THE PLAINTIFF'S REQUEST. HOWEVER, OFFICER DOUG THARP HONORED THE PLAINTIFF'S VERBAL APPEAL THE FOLLOWING MORNING, 10-31-99, WHICH WAS THEN THE 10th DAY WITH THE SAME LINEN.

(C) SEE THE SECOND AND THIRD PAGE OF EXHIBIT-39, THE PLAINTIFF LINEN SHOULD HAVE BEEN CHANGED AGAIN ON 11-7-99, HOWEVER, OFFICER BARKLEY FAILED TO ALLOW THE PLAINTIFF A CHANGE OF LINEN, AND ALSO FAILED RESPOND IN WRITING TO THE PLAINTIFF'S TWO REQUESTS IN CONCERN OF LINEN CHANGES. THEREFORE, AS OF TODAY, 11-9-99, the plaintiff h$_a$s had THE SAME LINEN FOR 10 DAYS INCLUDING 10-31-99. AND CONSIDERING THE PLAINTIFF IS ONLY ALLOWED THREE SHOWERS PER WEEK, THIS CONTINUED INSUBORDINATE BEHAVIOR BY THE DEFENDANTS IS ABSOLUTELY DESPICABLE. NEVERTHELESS OFFICER BARKLEY CAME TO THE PLAINTIFF CELL AND STATED THAT HE CHOSED NOT TO RESPOND TO SOMEONE ELSES SCREWUP BECAUSE HE DID NOT WORK IN SHU LAST WEEK

STATEMENT OF CLAIM CONTINUED

(D) LT. TINCHER RESPONDED TO THE REQUEST THE PLAINTIFF WROTE OFFICER BARK-
LEY 11-8-99, AND JUST HANDED IT TO THE PLAINTIFF IN THE LIBRARY.  HOWEVER, THE
LIEUTENANT DID NOT SAY ONE WORD OR ATTEMPT TO EXPLAIN WHY THE LINEN CHANGES HAS
NOT BEEN AS IS REGULATION OF ONCE PER WEEK.  ALSO, LT. TINCHER FAILED TO ADDRESS
THE ISSUE IN HIS RESPONSE, OTHER THAN TO STATE THAT OFFICER BARKLEY WOULD NOT
KNOW WHEN THE PLAINTIFF'S LINEN WAS LAST CHANGED.  HOWEVER, THIS STATEMENT BY
LT. TINCHER IS VERY UNTRUE AND MISLEADING, WHICH ALSO EXPLAINS EXACTLY WHY MR.
BARKLEY TRULEY CHOSED NOT TO ANSWER THE PLAINTIFF'S REQUEST HIMSELF, HOWEVER,
THE PLAINTIFF WILL GET BACK TO THE MEANING OF THIS LAST STATEMENT.

SEE EXHIBIT-40, Lt. TINCHER'S COLD AND CALCULATING RESPONSE IS FULL OF INTENDEN
DECEIT AND OUTRIGHT CONNIVERY, AS IS THE NATURE AND LT. TICHER'S MODE OF OPERA-
TION, WHICH THE PLAINTIFF WILL CLARIFY IN ONE SECOND! HOWEVER, THE FIRST PARA-
GRAPH OF LT. TINCHER'S RESPONSE IS PURELY FALSE BECAUSE IT MAKES NO DIFFERENCE
IF MR. BARKLEY IS PERMANENTLY ASSIGNED TO SHU OR NOT, WHEN ALL IS REQUIRED IS
TO SIMPLY REVIEW THE SO-CALLED LOG IN REFERENCE TO LINEN CHANGES.  ALSO, CONSI-
DERING IT WAS ALREADY 10 DAYS SINCE THE LAST CHANGE, IT SHOULDN'T HAVE MATTERED
THAT IT WAS DAY WATCH OR EVENING WATCH! WHEN THE VERY SAME THING HAPPENED THE
PREVIOUS WEEK, 10-31-99, OFFICER D. THARP CHANGED THE PLAINTIFF'S LINEN ON THE
SACRED DAY WATCH, SO WHAT? DOES LT. TINCHER HAVE ANY CONCERNS THAT IT HAD BEEN
TEN DAYS SINCE THE LAST LINEN CHANGE?  "NO, HE DOESN'T, (EXPLANATION FORTHCOMING
PLEASE REVIEW STATEMENT OF CLAIM # 11 (B), THE VERY SAME THING HAPPENED BETWEEN
8-19-99, AND 9-9-99, THE PLAINTIFF KEPT THE SAME LINEN FOR THREE WEEKS AND WHEN
THE PLAINTIFF FILED A COMPLAINT TO COUNSELOR C. KESLER, AND TO LT. TINCHER, MR.
KESLER RESPONDED THAT THE PLAINTIFF REFUSED LINEN CHANGE, AND CONTRARY TO THAT
FALSE ALLEGATION, LT. TINCHER RESPONDED THAT THE LOG DOCUMENTED THAT THE PLAIN-
TIFF DID SO CHANGE LINEN.  HOWEVER, BOTH THESE FICTITIOUS RESPONSES WAS UNTRUE,
COMMITTED TO COVERUP STAFF MISCONDUCT.  THIS IS WHY OFFICER BARKLEY DID NOT RE-
SPOND TO THE PLAINTIFF'S REQUEST HIMSELF.  FURTHERMORE, THIS ALSO VERIFIES LT.
TINCHER'S LACK OF CONCERN ABOUT THE LINEN CHANGES: AFTER HANDING THE PLAINTIFF
THE REQUEST HE ANSWERED WRITTEN TO MR. BARKLEY, THE PLAINTIFF STILL WAS NOT AL-
lowed A LINEN CH-ANGE ON THE EVENING WATCH SHIFT EITHER ON 11-9-99, THEREFORE,
NOW THAT ITS 11-10-99, THE PLAINTIFF HAS HAD THE SAME SHEETS FOR 11 DAYS, INCLU-
DING 10-31-99.  And no doubt THE LOG WILL PROBABLY BE ALTERED TO REFLECT THERES NO
MISHAP OF LINEN CHANGES BETWEEN 10-28-99, AND 11-10-99.

STATEMENT OF CLAIM CONTINUED

THE PLAINTIFF JUST ASKED THE EVENING WATCH OFFICER, MR. OLDS, ABOUT A
LINEN CHANGE TONIGHT, 11-10-99, AND OFFICER OLDS STATED THAT LINEN CHANGE WILL
BE TOMORROW NIGHT (THURSDAY). IT'S NO SURPRISE BECAUSE LT. TINCHER'S RESPONSE
OOZES THIS TYPE OF DECEIT. YOU SEE, THURSDAY IS THE NORMAL DAY OF LINEN CHANGES
AND NO DOUBT, THE LOG WILL THEN REFLECT THAT THE PLAINTIFF HAS BEEN CHANGING
LINEN AS SUCH AND/OR THE PLAINTIFF REFUSED TO CHANGE LINEN, AS WAS ERRONEOUSLY
REPORTED BEFORE! PLEASE TAKE NOTE THAT LT. TINCHER DID NOT ADDRESS THE NON LI-
NEN CHANGES IN HIS PRECISE RESPONSE OR CORRECT THE MISCONDUCT. THE PLAINTIFF
WONDER WHY, BECAUSE ISN'T THAT ODD THAT LT. TINCHER NEITHER DENIED OR CONFIRMED
THE PLAINTIFF'S ALLEGATIONS. AND AS FOR THE SECOND PARAGRAPH OF LT. TINCHER'S
STRICT RESPONSE, SURE, THERE'S A GREAT NEED TO SHARE POLICY WITH HIS STAFF IN
SHU BE-CAUSE APPARENTLY THEY ARE UNAWARE ITS THEIR DUTY TO ADHERE TO THE POLICY
CONCERNING RESPONDING TO INMATES REQUEST TO THEM. THE PLAINTIFF HAVE WRITTEN
NUMEROUS REQUESTS TO OFFICERS PARKER AND MR. BRYANT AND NEITHER ONE HAS EVER
RESPONDED TO EVEN ONE OF THOSE MANY REQUESTS. HOWEVER, ONE PARTICULAR OCCASION
LT. TINCHER RESPONDED TO A REQUEST WRITTEN TO MR. PARKER, THE SAME HE DONE ON
THE REQUEST WRITTEN TO OFFICER BARKLEY. THE PLAINTIFF AGAIN WONDER WHY IS THIS?
FOR SURE THEY'RE INTELLIGENT ENOUGH TO DO THEIR OWN RESPONSES, AN-D MR. PARKER
A-D MR. BRYANT ARE BOTH ASSIGNED TO SHU.

AND AS FOR THE THIRD PARAGRAPH OF LT. TINCHER'S RESPONSE, BETWEEN 10-21-99,
AND 10-29-99, THERE WAS AN ATTEMPT TO DENY THE PLAINTIFF'S RIGHT TO ATTEND THE
LAW LIBRARY BUT THEIR FRIVOLOUS CLAIMS OF PERSONS BEING BEFORE THE PLAINTIFF
WAS NOT FEASIBLE BECAUSE HARDLY ANYONE ELSE IN SHU REQUEST TO USE THE LAW LIBRA-
RY SO NOW THEY'VE RECRUITED EDITH BAREFOOT TO DENY THE PLAINTIFF ANY LEGAL ASSI-
STANCE OR THE USE OF THE ELECTRIC TYPEWRITER, ALL SO SUDDENLY AND ABRUPTLY AND
SO COINCIDENTAL WHEN FOR YEARS INMATES HAS BEEN ALLOWED TO USE THE ELECTRIC
TYPEWRITER AND OBTAIN LEGAL ASSISTANCE FROM THE INMATES LAW CLERKS, ESPECIALLY
BECAUSE THERE IS NO LEGAL ASSISTANCE PROGRAM AT THIS INSTITUTION. INSTEAD, THEY
ARE FORCING THE PLAINTIFF TO USE THIS INSUFFICIENT AND DIFFICULT ANCIENT MANUAL
TYPEWRITER

20. THIS CLAIM INVOLVES EIGHTH AMENDMENT VIOLATIONS AGAINST EXTREMELY CRUEL
AND HIGHLY UNUSUAL PUNISHMENT TO THE MAXIMUM.

(A) ON 9-27-99, THE DEFENDANTS MOVED THE PLAINTIFF FROM ADMINISTRATIVE DE-
TENTION TO DISCIPLINARY SEGREGATION AND INSTEAD OF ALLOWING THE ESCORTING OFFI-
CERS TO INVENTORY THE PLAINTIFF'S PROPERTY AS USUALLY DONE ON THE OTHER TWO OC-
CASIONS, LT. TINCHER ORDERED THE OFFICERS TO TAKE THE PLAINTIFF'S PROPERTY TO
THE PROPERTY OFFICE.

(3L)

STATEMENT OF CLAIM CONTINUED

THE PLAINTIFF ASKED LT. TINCHER TO ALLOW HIM TO CARRY HIS MEDICATION AND DOCTOR ISSUED EGGCRATE AND LT. TINCHER REFUSED THAT REQUEST. THE PLAINTIFF THEN ASKED LT. TINCHER TO AT LEAST ALLOW HIM TO TAKE HIS NITROGLYCERIN TABLETS AND LT. TINCHER RUDELY REFUSED THAT REQUEST ALSO, STATING THAT THE PROPERTY ROOM OFFICER WILL INVENTORY THE PLAINTIFF'S PROPERTY AND THEN ALLOW THE PLAIN-TIFF TO RECEIVE WHATEVER PROPERTY IS ALLOWED IN DISCIPLINARY SEGREGATION. HOW-EVER, LT. TINCHER WAS BEING INTENTIONALLY DISHONEST BECAUSE THE PLAINTIFF DID NOT RECEIVE ANY PROPERTY OR MEDICATION ON 9-27-99, AS WAS DECEPTIVELY STATED BY LT. TINCHER. NEVERTHELESS, THE PLAINTIFF ASKED THE ESCORTING OFFICERS BE-FORE THEIR SHIFT ENDED WHAT TIME WAS THE PROPERTY ROOM OFFICER GOING TO ALLOW THE PLAINTIFF HIS PROPERTY AND WAS INFORMED THAT THERE WAS NO PROPERTY ROOM OF-FICER AT WORK THAT DAY. THE PLAINTIFF THEN ASKED THE NEXT SHIFT OFFICERS ABOUT RECEIVING HIS MEDICATION AND MEDICAL ISSUED EGGCRATE, AND EXPLAINED TO THEM THAT LT. TINCHER STATED THAT THE PROPERTY ROOM OFFICER WAS SUPPOSED TO INVENTORY THE PLAINTIFF'S PROPERTY AND THEN ALLOW THE PLAINTIFF WHATS ALLOWED IN DISCIPLI-NARY SEGREGATION, AND THE OFFICERS STATED THAT LT. TINCHER KNEW THERE WAS NO PRPERTY OFFICER ON THE SECOND SHIFT AND THAT THEY DID NOT HAVE A KEY TO ENTER THE PROPERTY ROOM.

(B) IN THREE MONTHS THE PLAINTIFF WILL BE 52 YEARS OF AGE, AND IS BEING FOR A PREVIOUS HEART ATTACK THAT RESULTED IN SURGERY, AND ALSO A POST-SURGERY LOWER BACK SPINAL CORD CONDITION. THE PLAINTIFF IS BEING TREATED WITH THREE DIFFERENT HEART MEDICATIONS, AND HIGH BLOOD MEDICATION, AND PAIN MEDICATION, STOMACH MEDICATION, DIABETIC MEDICATION, AND CHOLESTEROL MEDICATION. (PLEASE SEE STATEMENT OF FACTS, CONCLUSION # 32 (C) FOR MORE DETAIL INFORMATION.

(C) THE FOLLOWING MORNING, APPROXIMATELY 5:00am, THE PLAINTIFF BEGAN SUF-FERING FROM SEVERE AND EXCRUCIATING CHEST PAINS AND WAS WITHOUT HIS NITROGLYCE-RIN THAT USUALLY SOOTHS THIS CONDITION. THERE IS NO INTERCOM SY-STEM IN con-FINEMENT FOR THIS TYPE OF EMERGENCY SO THE PLAINTIFF ATTEMPTED TO REACH THE CELL DOOR AND BAM ON IT FOR THE OFFICER, HOWEVER, THE PLAINTIFF COULD NOT BREATH AND PASSED OUT. THE PLAINTIFF THEN EXPERIENCED AN ELECTRICAL TYPE SHARP PAIN THE CHEST THAT BROUGHT HIM BACK TO CONCIOUSNESS AND AGAIN ATTEMPTED TO SUMMON THE OFFICER AND THE OFFICER CAME DOWN THE HALLWAY AND THE PLAINTIFF NOTIFIED TO THE OFFICER THAT HE NEEDED HELP, POINTING TO HIS CHEST. HOWEVER, THE OFFICER TOOK SO LONG THAT THE PLAINTIFF ATTEMPTED AGAIN TO REACH THE DOOR BUT PASSED OUT ON THE FLOOR AND BUSTED UP HIS MOUTH AND THE NEXT THING THE PLAINTIFF KNEW WAS SOMEONE PUTTING SOME TYPE OF AMMONIA SUBSTANCE UP HIS NOSE AND THEN RUSHING THE PLAINTIFF TO JACKSON COUNTY HOSPITAL, WHERE THE PLAINTIFF STAYED FOR A FEW DAYS.

(3M)

Page 4

RELIEF

IV.  State what relief you seek from the Court.  Make no legal
     arguments.  Cite no cases or statutes.

     THE PLAINTIFF SEEKS COMPENSATORY DAMAGES FOR HIS OUT OF POCKET,

     EXPENSES, AND THE UNNECESSARY WANTONLY INFLICTED MENTAL PAIN AND

     TORMENT, AND THE AGONIZING PHYSICAL PAIN, IN THE AMOUNT OF $100,000.00.

     THE PLAINTIFF ALSO SEEKS NOMINAL DAMAGES TO VINDICATE THE PLAINTIFF'S

     RIGHTS VIOLATED IN BAD FAITH, WILLFULLY, VEXATICUSLY, AND BLATANTLY

     FOR OPPRESSIVE REASONS, IN THE AMOUNT OF $450,000.00. (SEE CONTINUATION)

Signed this _16th_ day of _NOVEMBER_ ,

19 _99_ .


                              _Robert Williams_
                              _____

                              _____

                              (Signature of Plaintiff or
                              plaintiffs)


                        DECLARATION


I, _ROBERT WILLIAMS_                     declare under penalty

of perjury that I have read and subscribed to the above and state

that the information contained therein is true and correct to the

best of my knowledge.

Executed _NOVEMBER 16, 1999_    at _F.C.I. MARIANNA, FL. P.O. BOX 7007_ (32447)
         (date)                    (place)

                    _Robert Williams_
                    (signature of Plaintiff)


_____
Signature of Attorney (if any)

PAGE 4a (CONTINUATION)

RELIEF

IV. STATE WHAT RELIEF YOU SEEK FROM THE COURT. MAKE NO LEGAL ARGUMENTS.
CITE NO CASES OR STATUTES.

(C) THE PLAINTIFF ALSO SEEKS $3,000.00 PER DAY, FOR EACH DAY THAT THE
PLAINTIFF'S MATTRESS WAS ERRONEOUSLY CONFISCATED, STARTING FROM AUGUST
31, 1999, UNTIL THE DAY THE ILLEGAL CORPORAL PUNISHMENT STOPS. FURTHER,
THE PLAINTIFF SEEKS $12,000.00 PER DAY, FOR SEPTEMBER 4,5,6,7,8,9, 1999,
and SEPTEMBER 13, 1999, AND OCTOBER 15, 1999, WHEN THE PLAINTIFF MATTRESS
WAS ILLEGALLY CONFISCATED FOR 32 HOURS FOR EACH OF THOSE EIGHT DAYS.

(D) THE PLAINTIFF ALSO SEEKS ATTORNEYS FEES.

(E) THE PLAINTIFF ALSO SEEKS PUNITIVE DAMAGES IN THE AMOUNT OF $1,700,000.00

(F) THE PLAINTIFF ALSO SEEKS THAT DEFENDANTS, MICHAEL HARRIS, CHARLES KESLER
AND ROY TROUTMAN, BE DISQUALIFIED/SUSPENDED FROM SERVING ON ANY FURTHER DIS-
CIPLINARY COMMITTEES, INCLUDING MR. KESLER'S POSITION AS COUNSELOR, AND MR.
TROUTMAN'S POSITION AS A CASE MANAGER.

(G) THE PLAINTIFF ALSO SEEKS THAT DEFENDANT STERLING DAWSON BE DISQUALIFIED/
SUSPENDED FROM THE POSITION OF ADMINISTRATIVE REMEDY COORDINATOR.

(H) THE PLAINTIFF ALSO SEEKS THAT DEFENDANT, GEORGE McBRIDE BE DISQUALIFIED/
SUSPENDED FROM THE POSITION OF DISCIPLINARY HEARING OFFICER.

(I) THE PLAINTIFF ALSO SEEKS THAT DEFENDANTS WILLIAM S. WILLINGHAM AND LENA
MONTGOMERY, BE SUSPENDED FROM THEIR POSITIONS AS ASSOCIATE WARDENS.

(J) THE PLAINTIFF ALSO SEEKS THAT DEFENDANTS RAMONA PUESCHEL, LARRY LONG,
AND JAMES HARDY BE DISQUALIFIED/SUSPENDED FROM THE POSITIONS OF INCIDENT
REPORT INVESTIGATIVE LIEUTENANTS.

(K) THE PLAINTIFF ALSO SEEKS THAT DEFENDANT, CAROLYN V. RICKARDS BE DISQUA-
LIFIED/SUSPENDED FROM THE POSITION AS SOUTHEAST REGIONAL ADMINISTRATIVE
REMEDY COORDINATOR.

(L) THE PLAINTIFF ALSO SEEKS THAT DEFENDANTS, L. JENKINS (FIRST NAME UNKNOWN
AT THIS TIME) BE DISQUALIFIED/SUSPENDED FROM THE POSITION OF CENTRAL OFFICE
ADMINISTRATIVE REMEDY COORDINATOR. HOWEVER, THE PLAINTIFF IS IN THE PROCESS
OF OBTAINING THE FIRST NAME OF L. JENKINS, INCLUDING THREE OTHER ADMINISTA-
TIVE REMEDY COORDINATORS WHO SIGNED THEIR RESPONSES WITH ONLY ILLEGIBLE INI-
TIALS. THE PLAINTIFF REQUEST THE RIGHT TO FILE A MOTION TO AMEND THIS CIVIL
ACTION UNDER 28 U.S.C. SECTION 1331-1346, IN ORDER TO PROVIDE THE FULL NAMES
OF THE REMAINING DEFENDANTS, INCLUDING L. JENKINS.

(M) THE PLAINTIFF ALSO SEEKS $50,000.00 FOR THE PAIN AND SUFFERINGS CAUSED
BY THE REFUSAL TO ISSUE THE PLAINTIFF TOILET TISSUE. (N) AND $100,000.00
FOR THE REFUSAL ON 9-27-99, TO ALLOW THE PLAINTIFF MEDICATION, CAUSING SE-
VERE PAIN AND SUFFERING AND HOSPITALIZATION.

PAGE 4b (CONTINUATION)

RELIEF

IV.

(N) THE PLAINTIFF ALSO SEEKS THAT DEFENDANT ROBERT L. MATHEWS BE DISQUALIFIED/
SUSPENDED FROM THE POSITION OF SOUTHEAST REGIONAL DIRECTOR.

(O) THE PLAINTIFF ALSO SEEKS THAT DEFENDANT JERRY TINCHER BE DISQUALIFIED/
SUSPENDED FROM THE POSITION OF SPECIAL HOUSING UNIY LIEUTENAN-T.

(P) THE PLAINTIFF ALSO SEEKS THAT THE ATTORNEY GENERAL OFFICE INVESTIGATE
AS TO EXACTLY WHY T.J. BONDURANT, ASSISTANT INSPECTOR GENERAL, NEVER
ACKNOWLEDGE OR RESPOND TO THE PLAINTIFF'S EMERGENCY SENSITIVE COMPLAINT
THAT WAS FORWARDED TO HIS OFFICE BY THE OFFICE OF PROFESSIONAL RESPONSI-
BILITY, DATED SEPTEMBER 21, 1999.

(Q) THE PLAINTIFF ALSO SEEKS THAT THE ATTORNEY GENERAL OFFICE INVESTIGATE
AS TO EXACTLY WHY THE OFFICE OF INTERNAL AFFAIRS FAILED TO ACKNOWLEDGE
OR RESPOND TO THE PLAINTIFF'S EMERGENCY SENSITIVE COMPLAINT TO THEIR
OFFICE, DATED AUGUST 23, 1999. BUT INSTEAD, REFERRED THE PLAINTIFF'S
COMPLAINT TO DEFENDANT JAMES HARDY FOR INVESTIGATION. AND THEN AGAIN,
FAILED TO RESPOND TO THE PLAINTIFF'S LETTER DATED 10-7-99, IN DISPUTE
AND DISAGREEMENT THAT HIS (PLAINTIFF) COMPLAINT WAS REFERRED TO ONE
OF THE PERPRETRATORS OF HIS COMPLAINT FOR INVESTIGATION. ALSO, INTERNAL
AFFAIRS FAILED TO RESPOND TO THREE OTHER AMENDING COMPLAINTS FROM THE
PLAINTIFF.

(R) THE PLAINTIFF ALSO SEEKS THAT THE ATTORNEY GENERAL OFFICE INVESTIGATE
AS TO EXACTLY WHY THE SOUTHEAST REGIONAL DIRECTOR, ROBERT L. MATHEWS,
FAILED TO RESPOND TO THE PLAINTIFF'S EMERGENCY SENSITIVE COMPLAINT,
DATED AUGUST 23,1999. BUT INSTEAD, ALLOWED THE SOUTHEAST REGIONAL
OFFICE TO DENY THE PLAINTIFF'S APPEAL OF THE DISCIPLINARY HEARING
OFFICER ERRONEOUS CONVICTION FOR REFUSING PROGRAM ASSIGNMENT, WHEREAS,
THE PLAINTIFF NEVER SHOULD HAVE BEEN CHARGED WITH REFUSING PROGRAM AS-
SIGNMENT BECAUSE THE REGIONAL DIRECTOR NEVER RESPONDED TO THE PLAINTIFF'S
COMPLAINT, THEREFORE, THE INCIDENT REPORT WAS FRIVOLOUS. THE FACT IS,
THE PLAINTIFF WAS UNDER PROTECTIVE CUSTODY PENDINF AN INVESTIGATION AN
INVESTIGATION BY THE REGIONAL DIRECTOR OF THE PLAINTIFF'S SENSITIVE COM-
PLAINT, WHEREAS, THE REGIONAL DIRECTOR NEVER RESPONDED, THEREFORE, THE INST.
ITUTIONAL ADMINISTARTION HAD NO RIGHT OF MAKING THE DECISION TO WRITE THE
PLAINTIFF AN INCIDENT REPORT, WHEN IT'S THE REGIONAL DIRECTOR'S DUTY TO MAKE
MAKE THE FIRST DECISION AND THEN INFORM THE PLAINTIFF IN WRITING OF THAT
DECISION, WH ICH NEVER HAPPENED.